Edward ACKERMAN,
Plaintiff-Appellant,

v.

DIAMOND SHAMROCK CORPORATION,
Defendant-Appellee.

No. 80–3578.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 10, 1981.

Decided Feb. 1, 1982.

Willard E. Bartel, Miller, Stillman & Bartel, Cleveland, Ohio, for plaintiff-appellant.

John D. O'Brien, Brian F. Toohey, Cleveland, Ohio, for defendant-appellee.

Before WEICK * and LIVELY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Edward Ackerman appeals from a summary judgment in favor of his defendant employer in an action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* Appellant contends

---

* Circuit Judge Weick retired from regular active service under the provisions of 28 U.S.C. § 371(b) on December 31, 1981, and became a Senior Circuit Judge.

that he raised genuine issues of material fact in support of his claim of age discrimination and, therefore, summary judgment was improper. We affirm the summary judgment rendered by Senior District Judge Ben C. Green.

Appellant was an employee of the appellee Diamond Shamrock Corporation (Diamond) and predecessor corporations for 23 years. In 1978, he held the title of Director of Corporate Communications. On August 31, 1978, at a meeting with his superior, he was informed that his job was to be eliminated in the corporate reorganization, and that his duties were to be divided between two employees who had been reporting to him.

Since Ackerman's job was to be eliminated, his superior suggested that he take early retirement. He was handed a packet of papers which contained a document labeled "Internal Communication." This document listed organizational changes "which are effective immediately." The changes were that Ackerman had "elected to take early retirement effective January 1, 1979," and that in the interim he was assigned "Corporate communications projects." The document went on to list the assignments of two of Ackerman's former subordinates. These men were reassigned to different departments of the corporation, and their responsibilities included all the duties formerly performed by Ackerman. At that time one of these men was in his late thirties and the other was in his early fifties. Ackerman was 59.

Another document in the packet was a memorandum detailing the terms of Ackerman's retirement. The retirement agreement would give Ackerman much more than the benefits to which he would be entitled if he simply were terminated. Under the terms of the proposed agreement, he was to receive approximately $100,000 more than the amount provided under Diamond's normal separation policies. The agreement also contained other miscellaneous benefits.

Ackerman did not sign the agreement immediately. Although he states now that he never consulted an attorney about the proposed agreement, the record contains evidence that at the time he was given the proposal Ackerman stated that he wanted his lawyer to review it. He later stated before he had signed the agreement that his attorney was reviewing the retirement plan.

Almost a month later, on September 28, 1978, Ackerman signed the retirement agreement. In his deposition testimony, he said he signed the agreement "of his own free will;" that he understood the provisions of the agreement; and that Diamond had lived up to the terms of the agreement. Ackerman now is receiving payments under the agreement. In addition to the benefits provided in the original agreement, Ackerman received a $7,200 bonus for 1978; he also asked and received out placement counseling and job hunting expenses.

In granting summary judgment, the district judge did not rely on any evidence concerning Ackerman's job performance. There is evidence in the record, however, that the quality of Ackerman's work, in addition to the corporate decision to reorganize, influenced Diamond's decision to request him to take early retirement. His job performance had been the subject of an in-house investigation. The result of the investigation was a recommendation that Ackerman should not remain in charge of Corporate Communications. The report of the investigation indicated that Ackerman was a good individual performer, but he had a distaste for "people problems," and was unable to delegate responsibility effectively. In addition, the problems with his job performance were exacerbated by the use of alcohol. In his own deposition Ackerman admitted that he sometimes indulged in the proverbial "three martini lunch." On at least two occasions, his overindulgence in alcohol was the catalyst in embarrassing incidents during corporate dinner meetings.

Ackerman asserts that he knew nothing of the investigation of his performance. He thought that "everything was going swell." He states that when he was handed the packet of documents, his response was one

of shock and disbelief. He asserts that he was given no alternative to taking early retirement, and that he thought that he had no choice but to sign the agreement or else receive nothing. He contends that, in effect, his suggested early retirement was nothing more than a discharge. He states that he can think of no reason for his discharge other than his age.

## I.

On February 19, 1979, Ackerman notified the Department of Labor that he intended to file suit against Diamond for violating the ADEA. On July 20, he filed suit in an Ohio state court. Diamond removed the action to district court. Upon the completion of discovery, Diamond moved for summary judgment on the grounds that (1) Ackerman voluntarily retired from employment and (2) no genuine issue of material fact was raised to support a claim that age played a role in Diamond's decision to suggest early retirement. On July 16, 1980, the district judge granted the motion for summary judgment, primarily on the ground that Ackerman had signed the agreement voluntarily and, therefore, had not been "discharged," under the terms of the ADEA.

At the heart of Ackerman's claim of age discrimination, and of his attack on the district judge's decision, is his reliance upon a standard for establishing a prima facie case of discrimination paralleling that set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Citing decisions of the Fifth Circuit, he argues that he had raised genuine issues of material fact as to whether he has established a prima facie case of discrimination.

■ As modified to fit age discrimination cases, the *McDonnell Douglas* test for making out a prima facie case of discrimination requires that a plaintiff demonstrate that (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. *See Marshall v. Goodyear Tire and Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977). The district judge found that Ackerman met requirements one, three and four, but that he had not satisfied number two. Judge Green found no evidence in the record, other than Ackerman's "conclusory" allegations, supporting the argument that Ackerman did not sign the agreement voluntarily. Judge Green reasoned that retirement of Ackerman was voluntary and, therefore, he was not discharged. Since Ackerman was not discharged, he could not establish the second requirement of the above described standard for a prima facie case.

Ackerman contends that he has raised a genuine issue of material fact as to whether his retirement was voluntary. He claims that the circumstances surrounding the request of Diamond for his early retirement and his statement that he felt "that he had no other alternative than to sign the agreement and that if he failed to sign, he would receive nothing," create an issue of material fact which precludes summary judgment.

■ While summary judgment often is inappropriate to dispose of cases involving issues of intent and motive, the moving party has the right to judgment without the expense of a trial when there are no issues of fact left for the trier of fact to determine. *See First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 284–88, 88 S.Ct. 1575, 1590–93, 20 L.Ed.2d 569, (1968). Ackerman admitted that he signed the document of his own free will. The signed document states that he and Diamond "mutually desire" to make this arrangement. The memorandum given to him on August 31, 1978, proposing his early retirement, recites that his entitlement to the retirement benefits would be conditioned upon his "decision to *elect* early retirement." (Emphasis added.) He continues to accept the benefits of the agreement, which are generous and by no means oppressive. He waited four weeks to sign the agreement and stated that he was going to have an attorney examine it.

We agree with the conclusion of the district court from these facts that Acker-

man's decision to retire was voluntary. Ackerman has produced no evidence other than his "conclusory allegations" to rebut the persuasive evidence of the voluntariness of his actions.

## II.

■ Furthermore, Ackerman's claim under the ADEA has a more basic flaw. In previous decisions of this court, we have expressed our reluctance to "borrow and apply ... automatically" the prima facie case guidelines of *McDonnell Douglas v. Green*, to ADEA cases. *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 (6th Cir. 1975). This court prefers to decide ADEA claims "on a case-by-case basis, rather than adopting formalistic approaches . . . ." *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1118 n. 3 (6th Cir. 1980). A mechanical application of the *McDonnell Douglas* guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists.

■ The ultimate issue is whether age was a factor in a decision of an employer to terminate an ADEA claimant and whether the age of claimant made a difference in determining whether he was to be retained or discharged. *Laugesen v. Anaconda, supra*, 510 F.2d at 317. We find no genuine issue of material fact in the record as to whether Ackerman was discriminated against because of his age.

Both in the district court and on this appeal, Diamond has asserted that there is no evidence of age discrimination in the record. The district judge recognized the absence of concrete facts to support Ackerman's claim of age discrimination, but apparently based his decision upon the voluntariness of Ackerman's actions and did not reach this issue. Since the issue was raised in the district court and on appeal, and fully argued by the parties, we may uphold the decision of the district judge on this ground alone. *Winter v. Local No. 639*, 569 F.2d 146, 151 (D.C.Cir.1977).

■ The ADEA "was not intended as a vehicle for judicial review of business decisions." *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir. 1980). The only evidence in the record concerning the basis for Diamond's suggestion that Ackerman select early retirement indicates that Diamond made a legitimate business decision to eliminate Ackerman's job and divide his duties between two other employees. The only motivation for that decision, from the evidence in the record, was the desire to increase corporate efficiency. Nothing in the record, other than personal conclusions by Ackerman, suggests that Ackerman's age in any way was a factor in the decision. Even Ackerman seems to be unsure about the motivation behind the elimination of his job. In a letter written to a personal friend, and obtained during discovery, he stated that he thought that a personality conflict was the basis for the decision. Personality conflicts alone cannot supply a basis for an ADEA claim. "[A]n employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory." *Walter v. KFGO Radio*, 518 F.Supp. 1309, 1314 (D.N. D.1981) *citing Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n.6 (1st Cir. 1979). This is especially true when, as in the present case, a management level job is involved. *Loeb v. Textron, supra*, 600 F.2d at 1019.

Ackerman argues that his case is analogous to the situation in *Wilson v. Sealtest Foods*, 501 F.2d 84 (5th Cir. 1974), in which the Fifth Circuit concluded that the granting of a directed verdict by the trial judge was improper. We find the facts in the present case more analogous to those in *Sahadi v. Reynolds Chemical, supra*, 636 F.2d 1116 (6th Cir. 1980), and *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914 (2nd Cir. 1981). In *Wilson*, the record contained several references to the desire of the company to place younger men in the plaintiff's job. In *Sahadi* and *Stanojev*, as in the present case, there were no such statements. In both of the latter cases, the job of plaintiff was eliminated for business reasons. The evidence in the record in the present case demonstrates such is the situation here.

Diamond appears to have been rather generous with Ackerman. Rather than simply terminating him or switching him to a lower paying or less prestigious job, Diamond offered him an opportunity to retire with dignity. "While discharge without compensation is obviously undesirable, retirement on an adequate pension is generally regarded with favor." *Zinger v. Blanchette*, 549 F.2d 901, 905 (3rd Cir. 1977).

We find no evidence of any improper motive on the part of Diamond in the record. Therefore, we hold that summary judgment was properly granted by the district court.

The summary judgment of the district court is affirmed. No costs are taxed. Each party will bear his or its own costs on this appeal.