787 F.2d 174
 122 L.R.R.M. (BNA) 2399, 40 Fair
Empl.Prac.Cas. 1383,
39 Empl. Prac. Dec. P 36,053
 Robert MERKEL (83-3874/3893), (84-3530); Michael Cain
(83-3875/3894), (84-3532); Jacob Hughes
(83-3876/3895), (84-3531),
Plaintiffs-Appellees, Cross-Appellants,
v.
SCOVILL, INC., Defendant-Appellant, Cross-Appellee.
 Nos. 83-3874 to 83-3876 and 83-3893 to 83-3895 and 84-3530
to 84-3532.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 6, 1985.
Decided March 28, 1986.
 
 Edward G. Marks, Charles Weiner, French, Short, Marks, Weimer & Valleau, Cincinnati, Ohio, Stanford G. Wilson, Robert L. Thompson (argued), Elarbee, Thompson & Trapnell, Atlanta, Ga., for defendant-appellant cross-appellee.
 James B. Helmer, Jr. (argued), William E. Clements, Kondritzer, Gold & Frank, Cincinnati, Ohio, for plaintiffs-appellees cross-appellants.
 Before ENGEL and KENNEDY, Circuit Judges, and BROWN, Senior Circuit Judge.*
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Defendant-Appellant and Cross-Appellee Scovill, Inc. (Scovill) appeals and Plaintiffs-Appellees and Cross-Appellants Robert Merkel, Michael Cain and Jacob Hughes cross-appeal from a judgment entered by the district court for plaintiffs in these consolidated actions brought pursuant to the Federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq., and under the laws of Ohio.
 
 I.
 Facts
 
 2
 Plaintiffs were employed as janitors by Scovill at its Nutone plant in Cincinnati, Ohio. On December 18, 1980, Cain and Hughes presented an authorization pass to a Scovill guard which permitted them to remove scrap lumber from the plant. The pass had been obtained for Cain by Merkel. The guard permitted the two men to remove a box of scrap lumber and place it in Cain's truck, but the guard suspected, based on the unusual size of the box, that it contained valuable company property. The guard notified John Connolly, his supervisor, and Paul Schlesinger, Assistant Director of Industrial Relations, of his suspicion that the two men were attempting to remove valuable company property with a pass that authorized only the removal of scrap wood. Once Schlesinger arrived, the guard cut a small hole in the bottom of the box, revealing several small cardboard containers. Schlesinger's supervisor, John Henson, Director of Industrial Relations, contacted by Schlesinger regarding the possible theft, instructed Schlesinger to determine whether the box in fact contained valuable property and, if so, to suspend the two employees pending an investigation.
 
 
 3
 Cain and Hughes were detained until Schlesinger arrived. In the presence of Schlesinger and a security guard, the two men removed the wood from the box, uncovering four cardboard containers identical to those used by Scovill for packaging finished merchandise. Schlesinger and Henson questioned Cain and Hughes about the possible theft. Merkel was neither questioned nor disciplined in any manner at that time. Cain and Hughes were discharged on December 23, 1980 for allegedly removing company property without authorization. At the time of their discharge, Cain was fifty-two years old and Hughes was fifty. Both men were replaced by the company with younger employees.
 
 
 4
 Approximately five months after his discharge, Cain filed a claim of age discrimination with the Equal Employment Opportunity Commission (EEOC) and with the Ohio Civil Rights Commission (OCRC). Pursuant to its investigation, the OCRC notified Scovill by letter of the charge filed by Cain and directed that Scovill provide the agency with information with regard to the events of December 18, 1980. In particular, the OCRC directed that Scovill obtain an affidavit from Merkel attesting to his knowledge of the incident.
 
 
 5
 Merkel was questioned on several occasions by company officials regarding the events of December 18th. Believing that Merkel had made inconsistent statements during the pendency of the company's investigation, Henson requested that Merkel submit to a polygraph examination. Merkel initially agreed, but subsequently changed his mind and refused to take the examination. At a meeting with Schlesinger on October 22, 1981, Merkel agreed to respond to questions set forth in the OCRC letter of inquiry. Margaret Poole, a company secretary, attended the meeting and recorded Merkel's answers in shorthand. On the following day, Merkel was given an affidavit which Poole had prepared from her notes and was permitted to review the statement at his home. When Merkel returned to work on October 27th, he informed Schlesinger that he would not sign the affidavit, because the statements attributed to him in the document were inaccurate. Schlesinger thereupon notified Merkel that he was discharged for refusing to cooperate in the OCRC investigation and for giving inconsistent statements.
 
 
 6
 Cain, Hughes and Merkel filed separate actions in federal district court against Scovill. These cases were later consolidated for discovery and trial before a jury. Claiming age was a determining factor in their discharge by the company, Cain and Hughes each alleged violations of the ADEA and the comparable state statute, Ohio Rev.Code Ann. Sec. 4101.17. Merkel alleged violations of the anti-retaliatory provisions of the ADEA, 29 U.S.C. Sec. 623(d), and of Ohio Rev.Code Ann. Sec. 4112.02. Additionally, Merkel asserted a common law cause of action for wrongful discharge, contending that he had been improperly discharged for refusal to commit perjury or falsification. Each plaintiff sought reinstatement, back pay and attorney's fees pursuant to his federal claim and compensatory and punitive damages in his state claim.
 
 
 7
 After rulings preliminary to the jury trial and after denial of Scovill's motions for directed verdicts at trial, the ADEA claims of Cain, Hughes and Merkel, as well as the state statutory claim of Hughes and the common law claim of Merkel, were submitted to the jury. In response to special interrogatories, the jury returned verdicts in favor of plaintiffs on each of these claims. Thereafter, the district court entered substantial judgments against Scovill.
 
 
 8
 Subsequently, Scovill moved for judgment n.o.v. or for a new trial. The district court denied the motions with respect to all the federal claims but granted judgment n.o.v. in favor of Scovill as to Merkel's common law action of wrongful discharge, concluding that there was no evidence from which the jury could properly find that Scovill discharged Merkel because he refused to commit perjury or falsification. The motion for a new trial, filed by Scovill, was denied, conditional upon Hughes' acceptance of a remittitur in the amount of $125,000 as to the compensatory damages received in his state age discrimination claim.[1] The district court entered final judgments on November 29, 1983, from which the parties have appealed.
 
 II.
 Discussion
 
 9
 The litigants have raised numerous issues in their briefs. However, the following disposition by this court dictates that we need address only four of the assignments of error raised by the parties.
 
 
 10
 Scovill first argues that the district court erred by failing to grant its motion for judgment n.o.v. with respect to the ADEA claims of Cain and Hughes. Scovill contends that these plaintiffs failed to produce any evidence from which the jury could properly infer that age was a determining factor in the company's decision to discharge the employees.
 
 
 11
 It is well settled law in this circuit that in reviewing the propriety of a judgment n.o.v., an appellate court, in reviewing the record, applies the same standard as the district court below. Hill v. Spiegel, Inc., 708 F.2d 233, 237 (6th Cir.1983). The standard has been stated as:
 
 
 12
 Judgment notwithstanding the verdict is not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. It should not be granted if there is a conflict in the evidence, and the credibility of the evidence is not to be considered in passing on [the] motion for judgment.
 
 
 13
 Reeves v. Power Tools, Inc., 474 F.2d 375, 380 (6th Cir.1973), quoted in National Polymer Products v. Borg-Warner Corp., 660 F.2d 171, 178 (6th Cir.1981) (footnotes omitted).
 
 
 14
 The ADEA provides, in part, that "[i]t shall be unlawful for an employer ... to discharge any individual ... because of such individual's age...." 29 U.S.C. Sec. 623(a)(1). The prohibitions in the ADEA only apply to individuals between the ages of forty and seventy. 29 U.S.C. Sec. 631(a). We have repeatedly held that in an age discrimination action under the federal statute, the ultimate issue is whether age was a determining factor in the discharge of the complaining employees. See Blackwell v. Sun Electric Corp., 696 F.2d 1176, 1179 (6th Cir.1983); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982); Laugesen v. Anaconda Co., 510 F.2d 307, 317 (6th Cir.1975). We rejected long ago attempts to mechanically apply to ADEA proceedings the evidentiary standards enumerated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and indicated that such actions are to be reviewed on a "case by case basis." Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 n. 3 (6th Cir.1980).
 
 
 15
 The district court concluded that the evidence presented was sufficient to prevent a judgment n.o.v., because the record showed that (1) younger employees who had removed company property absent authorization were treated differently than Cain and Hughes; (2) Scovill failed to question Merkel about the alleged theft until after the OCRC requested information; and (3) Scovill had no written policy to deal with the unauthorized removal of company property. We hold, however, that none of these three factors upon which the district court relied provided a proper basis for an inference that age was a determining factor in the company's decision to discharge Cain and Hughes.
 
 
 16
 A review of the record discloses that younger employees who were alleged to have been treated differently by Scovill were patently not "similarly situated" with Cain and Hughes. Accordingly, evidence of Scovill's treatment of these employees produced no implication of age discrimination by the company.
 
 
 17
 One such employee, David Pence, was suspended for five days after attempting to remove property unaccounted for on his authorization pass. Regarding the incident, Henson testified that an identical box had contents which matched the description on the pass, and that he believed Pence had inadvertently taken the wrong container from the area where the boxes had been kept. The company's treatment of Pence, thus, was readily distinguishable from the facts in the instant case, as Scovill believed Cain and Hughes had deliberately planned to remove company property. Another younger employee, William Gray, was suspended for two days by the company, when he was discovered to have removed a roll of tape and two dozen paper bags from the plant without authorization. The treatment of Gray, therefore, was also distinguishable from that of Cain and Hughes, since Scovill's supervisors believed the latter were stealing valuable company merchandise worth approximately $800. Two other younger employees, Bruce Cremer and Robert Suer, were charged by the company with unauthorized possession of Scovill property. At their request, the employees were permitted to resign in lieu of being discharged. Since Cremer and Suer were relieved by the company, and the record does not disclose a similar request to resign filed by the plaintiffs in the instant case, no evidence of disparate treatment was presented.
 
 
 18
 As to Scovill's failure to question Merkel after learning of the possible theft, testimony at trial disclosed that Scovill was not even aware of Merkel's involvement in the alleged incident, except for the knowledge that Merkel routinely obtained scrap passes for company employees, including, in this case, the scrap pass for Cain. Moreover, Merkel was not involved in transporting the concealed boxes, nor did Scovill have any apparent reason to believe that Merkel was involved in the alleged theft. Thus, Scovill's delay in questioning the younger employee provided no support for a claim of disparate treatment.
 
 
 19
 As to the third factor relied upon by the district court, the fact that Scovill had no written policy defining and prohibiting theft failed to establish any reasonable implication of disparate treatment toward the older employees.
 
 
 20
 Since we conclude that a jury could not within reason find that age was a determining factor in Scovill's discharge of Cain and Hughes, we hold that the district court erred in refusing to grant the request for judgment n.o.v. on the ADEA claims of Cain and Hughes.
 
 
 21
 Scovill secondly argues that the district court erred by failing to grant judgment n.o.v. on Hughes' state age discrimination claim.
 
 
 22
 Ohio Rev.Code Ann. Sec. 4101.17(A) provides:
 
 
 23
 No employer shall ... discharge without just cause any employee between the ages of forty and seventy who is physically able to perform the duties and otherwise meets the established requirements of the job and the laws pertaining to the relationship between employer and employee.
 
 
 24
 Recently, in Barker v. Scovill, Inc., 6 Ohio St.3d 146, 451 N.E.2d 807 (1983), the Supreme Court of Ohio addressed the proof necessary to support a claim under Sec. 4101.17. Barker further established that in cases initiated pursuant to Sec. 4101.17, like those actions brought under the ADEA, the ultimate issue is whether age was a determining factor in the employer's decision to discharge. Barker, 451 N.E.2d at 811. Therefore, in view of this court's earlier conclusion that Cain and Hughes failed to introduce any evidence to support their federal age discrimination claim, the judgment in favor of Hughes on his state claim under Ohio Rev.Code Ann. Sec. 4101.17 must similarly be set aside.
 
 
 25
 Scovill finally contends that the district court erred by refusing to grant judgment n.o.v. on Merkel's federal claim of retaliatory discharge. Merkel's claim was brought pursuant to 29 U.S.C. Sec. 623(d) which prohibits an employer from discriminating against an employee, because an employee has "made a charge, testified, assisted or participated in any manner in an investigation, proceeding or litigation under [the ADEA]." Merkel thus bore the burden of proving that a desire to retaliate for his involvement in the investigation of Cain's state age discrimination claim was a determining factor in Scovill's decision to discharge. See West v. Fred Wright Construction Co., 756 F.2d 31, 34 (6th Cir.1985).[2]
 
 
 26
 The basis for the district court's denial of the judgment n.o.v. requested by Scovill was the termination of employment notice received by Merkel. The notice read: "Mr. Merkel refused to cooperate in a state investigation and gave conflicting statements regarding his activities as associated with the investigation to the company."
 
 
 27
 In denying Scovill's motion for a judgment n.o.v., the district court stated:
 
 
 28
 With respect to Merkel's federal claim, we ... find that he was discharged because of his participation, or lack thereof, in an investigation of an age discrimination claim and that the defendant acted willfully.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 It is true, as defendant argues, that defendant presented the jury with evidence that Merkel gave Scovill inconsistent statements from which the jury might have inferred that Merkel was terminated for a legitimate nondiscriminatory reason. [However, the statement in the termination notice] as to the cause for Merkel's termination is evidence from which a reasonable jury might well have inferred that Merkel was terminated for his participation (in the form of nonparticipation) in the OCRC's investigation of an age discrimination charge.
 
 
 32
 * * *
 
 
 33
 * * *
 
 
 34
 Thus, it was the district court's view that a discharge of Merkel for giving conflicting answers would not have been a violation of the ADEA, but a discharge of Merkel for refusing to participate in the investigation would have been a violation. Since there was evidence that Merkel was discharged for nonparticipation, the judgment n.o.v. was denied.
 
 
 35
 Preliminarily, we note that Sec. 623(d) of the ADEA in terms prohibits discrimination against an employee because the employee "participated in any manner in an investigation" under the ADEA. Thus, at least arguably and as Scovill contends, discrimination against an employee for lack of participation or nonparticipation in an investigation would not be a violation of the ADEA. This may be true as a general proposition. However, we believe, in view of the remedial purpose of the ADEA, that there may well be exceptions to this proposition. For example, if an employer, in the course of an investigation, seeks a statement from an employee that the employer knows or should know to be false, or the employer does not reasonably believe that the employee has the sought-for information, and the employee refuses, discrimination or retaliation against the employee for such nonparticipation may well be a violation of the ADEA. However, here there was no evidence, as the district court had found in another context, see infra p. ---- and Merkel, 573 F.Supp. at 1064, that Scovill knew or should have known that the affidavit was false, even if it was, and there was no evidence that Scovill did not reasonably believe that Merkel had the sought-for information; all the evidence is to the contrary. Moreover, Scovill had been directed by the OCRC to obtain an affidavit from Merkel. It is in the interest of all concerned and consistent with the purpose of the ADEA to investigate and to resolve a discrimination charge as expeditiously and as fairly as reasonably possible. Thus it appears to us that the ADEA should not be construed to hold an employer liable for retaliation against an employee under the circumstances presented here.
 
 
 36
 Accordingly, we conclude that, under the undisputed facts presented here, there was no basis for the finding that Scovill violated the ADEA in discharging Merkel.
 
 
 37
 Addressing now the issues raised by plaintiffs in their cross-appeal, Merkel asserts that the district court erred in granting judgment n.o.v. on his cause of action under Ohio law for wrongful discharge. It was Merkel's contention that Scovill discharged him for refusing to sign a false statement. The district court had earlier concluded that if faced with the question, Ohio would recognize a public policy exception to its employment at will doctrine and permit an employee to bring a claim for wrongful discharge, where the termination was based on the employee's refusal to commit perjury or falsification. The jury returned a verdict in favor of Merkel and the district court, at the insistence of Scovill, subsequently granted a judgment n.o.v., holding that Merkel had failed to present evidence from which a jury could reasonably find that Scovill was guilty of suborning perjury or falsification or even attempting to suborn perjury or falsification.[3]
 
 
 38
 As instructed by the court,[4] to prevail on his claim for wrongful discharge, it was incumbent upon Merkel to prove that Scovill knew that the statements contained in the affidavit were false. Our review of the evidence discloses, as the district court had found, that Merkel presented no evidence demonstrating that Scovill had knowledge that the affidavit was false. Rather, the evidence established that Schlesinger requested Merkel to sign the document, as Schlesinger believed it contained an accurate account of Merkel's earlier statements. Accordingly, we hold that the district court properly granted judgment n.o.v. on Merkel's common law wrongful discharge claim.
 
 III.
 Attorney's Fees
 
 39
 The remaining issue before us is the district court's award of attorney's fees and costs to counsel for plaintiffs. The district court, after holding an evidentiary hearing on the issue, awarded plaintiffs' counsel attorney's fees and costs in the amount of $125,896.02 and $5,399.65, respectively.
 
 
 40
 Since we determine that plaintiffs were not entitled to prevail on any claim, the award of attorney's fees and costs is vacated.
 
 
 41
 Accordingly, for the reasons stated herein, the judgment of the district court is affirmed in part and reversed in part and the cause is remanded for dismissal.
 
 
 
 *
 This appeal was originally heard on December 6, 1984, before a panel consisting of Judge Keith, Judge Krupansky and Judge Phillips. Due to the untimely death of Judge Phillips following oral argument in the case, the appeal was rescheduled for argument and disposition before a new panel
 
 
 [1]
 The district court opinion is published at 573 F.Supp. 1055 (S.D.Ohio 1983)
 
 
 [2]
 Scovill does not contend that its discharge of Merkel could not be a violation of the ADEA simply because it was alleged to be connected with an investigation by a state agency of a possible violation of state law
 
 
 [3]
 Absent a contract of employment, employer-employee relationships are generally considered to be "at will." Dadas v. Prescott, Ball & Turben, 529 F.Supp. 203, 205 (N.D.Ohio 1981). Moreover, even if the discharge was willfull, wanton or malicious, no cause of action arises. Fawcett v. G.C. Murphy and Co., 46 Ohio St.2d 245, 348 N.E.2d 144, 148 (1976)
 The district court reasoned that there was a distinction between a discharge in gross neglect of an employee's rights and a discharge based on a refusal to commit an illegal act. Moreover, the court concluded, recognizing such an exception would effectuate the state's public policy against perjury. Since we conclude that the district court was correct in its determination that there was insufficient evidence to support the finding that Scovill discharged Merkel for refusal to make a false statement, we need not decide whether such an exception to Ohio's employment at will doctrine exists.
 
 
 [4]
 The trial court instructed the jury on Merkel's wrongful discharge action that the following elements had to be found in order to state a claim:
 
 
 [1]
 The affidavit that Merkel refused to sign contained false information
 
 
 [2]
 Scovill knew that the information in the affidavit was false
 
 
 [3]
 Even though Scovill knew that the affidavit was false, Scovill solicited Merkel's signature on the document
 
 
 [4]
 Scovill discharged Merkel for refusing to sign the affidavit