16 F.3d 1220
 63 Fair Empl.Prac.Cas. (BNA) 1376
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert K. LANDRUM, Plaintiff-Appellant,
v.
BOARD OF REGENTS OF EASTERN KENTUCKY UNIVERSITY; Haly
Funderburk; John D. Rowlett; Charles F. Falk; Charles L.
Hilton; Giles T. Black, Individually and Officially as
Employees of Eastern Kentucky University, Defendants-Appellees.
 No. 92-6231.
 United States Court of Appeals, Sixth Circuit.
 Feb. 8, 1994.
 
 Before: MILBURN and BATCHELDER, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Robert K. Landrum, appeals grants of summary judgment in favor of his former employer, Eastern Kentucky University (EKU), in this action brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621-634. Landrum contends that he raised genuine issues of material fact in support of his claims of age discrimination and, therefore, summary judgment was improper.
 
 
 2
 Landrum is an academician with impressive credentials. He has a D.B.A. and B.S. from the University of Kentucky, an M.B.A. from Harvard, and an S.B. from the University of Chicago. From 1974 to 1976 Landrum was a Professor of Management at EKU. In 1976, Landrum was not offered a renewal contract to teach at EKU. In that same year, Landrum brought a Section 1983 action against EKU in the United States District Court for the Eastern District of Kentucky. The result of this suit was a consent decree entered by the district court on August 3, 1984.
 
 
 3
 Pursuant to the terms of the consent decree, Landrum was paid $100,000, and reinstated as a professor at EKU. Landrum's employment continued under the consent decree through the academic year (1988-89) in which he reached age 65. In compliance with the consent decree, Landrum was then given a year of terminal-leave-with-pay during which he had no duties to teach, administrate, or to do any work whatsoever for the University. At the end of the terminal leave year Landrum applied for employment as permitted by the terms of the decree, but the University chose not to "voluntarily rehire" him.
 
 
 4
 Landrum filed this action in November 1990. In his suit, Landrum alleged that the defendants inflicted two categories of wrongs upon him. First, Landrum charged EKU with violating his rights under 29 U.S.C. Sec. 623(a)[1] and KRS Sec. 244.040,[2] the federal and state statutory prohibitions against age discrimination. Second, Landrum asserted that EKU's actions breached his contractual rights under the consent decree.
 
 
 5
 Landrum brought his claims in four counts: Count One alleged federal age discrimination violations; Count Two alleged state age discrimination violations; Count Three contained contractual discharge claims; and Count Four alleged breach of the settlement agreement.[3] The district court granted summary judgment to EKU on Counts One, Two, and Four. However, in a Memorandum Opinion dated June 18, 1992, the district court altered its grants of summary judgment as to Counts One and Two, reinstating only Landrum's claims that EKU refused to rehire him based on his age. As a result, the discriminatory refusal to rehire claims reinstated from Counts One and Two, and the contractual discharge claims asserted in Count Three of the complaint were tried before a jury in July 1992. The jury found for the University, and against Landrum. Landrum appeals the grants of partial summary judgment on his age discrimination claims. Landrum also argues that a number of prejudicial errors occurred at the trial of the discriminatory refusal to rehire and the contractual discharge claims.
 
 I.
 
 6
 In 1976, Landrum filed suit against EKU alleging that the University had violated his Due Process and First Amendment rights. The district court granted summary judgment in favor of EKU as to Landrum's First Amendment claim. In April of 1984, issues pertaining to the Due Process claim were tried before a jury, which found in favor of Landrum.
 
 
 7
 Following the trial, the parties entered into and successfully completed settlement discussions. On August 3, 1984, the district court entered a consent decree purporting to settle all issues and to incorporate in full the settlement agreement. The consent decree shows that all parties were represented by counsel. The relevant sections of the consent decree provide as follows:
 
 
 8
 1. Eastern Kentucky University agrees to reinstate Robert K. Landrum as a full professor in its college of Business, Department of Business Administration, as a fully tenured professor, and a regular member of the teaching faculty in such school and department, to be employed through the academic year when he reaches the age of 65 years, according to the provisions of the University Faculty Handbook.... He shall be treated as a full professor in terms of class scheduling and college and departmental professional duties and obligations. Neither the plaintiff nor defendants will retaliate or take reprisal against the other in any way on account of this lawsuit.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 3. Robert K. Landrum agrees to accept, and Eastern Kentucky University hereby offers to said Landrum, a terminal-leave-with-pay status for Robert K. Landrum for the academic year following the year in which said Landrum reaches the age of 65 years. During the terminal leave year, Robert K. Landrum shall have no duties whatsoever for the university....
 
 
 12
 4. At the conclusion of his terminal leave year, i.e., the academic year following his 65th birthday, Robert K. Landrum will no longer have any employment status with Eastern Kentucky University, unless he is voluntarily rehired by the university pursuant to a separate contract of employment. His tenure status is thereupon agreed to have expired in full, and all obligations of the university to him shall cease.
 
 
 13
 5. Plaintiff will be paid by defendants in cash, within two (2) weeks of the date of entry of this Decree, the sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS, which shall be inclusive of all claims for damages, punitive damages and attorneys' fees. Ordinary court costs, but specifically excluding attorney's fees, will also be paid by defendants.
 
 
 14
 6. In consideration of the terms hereinabove set forth, Robert K. Landrum releases any and all legal claims which he has or may have against [EKU], up to and including the date on which this order is entered....
 
 
 15
 It is upon the terms of this consent decree that Landrum bases his challenges to EKU's employment actions. Landrum contends that by adhering to the letter of this decree EKU discriminated against him on the basis of age; and, violated his rights to remain tenured under the decree.
 
 A. Landrum's Age Discrimination Claims
 
 16
 The district court originally granted summary judgment to EKU on all of Landrum's age discrimination claims asserted in Counts One and Two of his complaint; however, on June 18, 1992, the district court altered its grants of summary judgment as to Counts One and Two, reinstating Landrum's claims that EKU refused to rehire him based on his age. The failure to rehire claims went to the jury which decided against Landrum. Summary judgment on the other age discrimination claims in Counts One and Two was not disturbed.
 
 
 17
 Landrum argues that summary judgment as to his age discrimination claims was erroneously granted because he is entitled to protection under the ADEA and its state counterpart until he reaches age 70, and that this protection was not eliminated by his signing the consent decree. Landrum also argues that the consent decree could not authorize EKU to commit acts in violation of federal law, nor does it mandate that his employment be terminated upon his 65th birthday.
 
 
 18
 This Court reviews the district court's grants of summary judgment de novo. See Pinney Dock & Transp. Co., v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir.1988). Summary judgment is appropriate only where, after making all reasonable inferences in favor of the non-moving party there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); EEOC v. University of Detroit, 904 F.2d 331, 332 (6th Cir.1990). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.
 
 
 19
 Landrum asserts that by adhering to the terms of the consent decree, EKU violated the ADEA. Two facts are indisputable: first, at the time that the consent decree was entered into both the state and federal age discrimination acts provided protection for tenured professors until the age of 70; and second, that the consent decree mandated termination of Landrum's tenure at the end of the academic year following his 65th birthday. Relying on Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir.1982), Landrum argues that these facts, combined with certain "concessions" by EKU, are sufficient to establish a prima facie case of age discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
 
 
 20
 However, whether or not Landrum's claims are sufficient to establish a formalistic prima facie case is not dispositive of whether summary judgment was appropriate. This Circuit has repeatedly held that, with respect to ADEA claims, "[w]hile it may not be unreasonable to assume that in a proper case the guidelines established in McDonnell Douglas v. Green can be applied in age discrimination ... cases, we believe it would be inappropriate simply to borrow and apply them automatically." Laugesen v. Anaconda Co., 510 F.2d 307, 312 (6th Cir.1975); see also Ackerman, 670 F.2d at 70 ("[t]his court prefers to decide ADEA claims 'on a case-by-case basis, rather than adopting formalistic approaches....' "); Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1179 (6th Cir.1983) (quoting Laugesen ).
 
 
 21
 With this principle in mind, we find that in this case it is not necessary to address Landrum's claims that he has established a prima facie case,[4] because "[t]he ultimate issue is whether age was a factor in a decision of an employer to terminate an ADEA claimant and whether the age of claimant made a difference in determining whether he was to be retained or discharged." Ackerman, 670 F.2d at 70; Merkel v. Scovill, Inc., 787 F.2d 174, 177 (6th Cir.) cert. denied, 479 U.S. 990 (1986). If, as the district court found, Landrum cannot establish any age-related animus in relation to the consent decree, and EKU did no more than rigidly adhere to the consent decree and the decree itself did not violate the ADEA, then there is no need to engage in "an overly mechanical application [of McDonnell Douglas, which] could supply an ADEA plaintiff with a triable claim where none exists." Ackerman, 670 F.2d at 70.
 
 
 22
 That this approach was utilized by the district court is evidenced by the fact that despite laying out the elements of a McDonnell Douglas prima facie case, the district court did not make the prima facie case analysis; instead the district court held:
 
 
 23
 Landrum's contention that he was not rehired simply by virtue of his reaching the age of 65 confuses age discrimination with determination of a time period on the basis of an individual's age. Discrimination involves disparate treatment of individuals who are outwardly equal. In discrimination, there is a malicious prejudice which exists solely because of the presence of one characteristic, all others being equal. The end of Landrum's tenure at age 65 occurred not out of prejudice, but at the end of an appointed period of time. His age was merely the indicator of the extent of time.
 
 
 24
 While we agree with the district court's findings in this matter, we feel that its determination does not sufficiently explain the peculiarities of the facts in this case and that further analysis is required.
 
 
 25
 Landrum's 1976 lawsuit was settled by consent decree in 1984. As noted above, the consent decree specifically set the conditions of Landrum's reinstatement, including when his tenure would terminate and what the parties' obligations to each other were after the termination of tenure. There is nothing in the provisions of the ADEA that prevents parties from entering into settlement agreements or consent decrees that fix an employee's term of employment for a period less than that which is statutorily protected, so long as there is no discriminatory intent or age-related animus present in the formation of the settlement or decree.
 
 
 26
 A consent decree is a final judgment that should be construed basically as a contract founded on the agreement of the parties. United States v. ITT Continental Baking Co., 420 U.S. 223, 236 (1975); Vogel v. City of Cincinnati, 959 F.2d 594, 598 (6th Cir.) cert. denied, 113 S.Ct. 86 (1992); Long v. City of Saginaw, 911 F.2d 1192, 1201 n. 5 (6th Cir.1990); Dotson v. U.S. Dep't of Housing and Urban Dev., 731 F.2d 313, 318 (6th Cir.1984); Brown v. Neeb, 644 F.2d 551, 557 (6th Cir.1981). A consent decree, "should be strictly construed to preserve the bargained for position of the parties." Williams v. Vukovich, 720 F.2d 909, 920 (6th Cir.1983).
 
 
 27
 The bargained-for positions of the parties are clearly discernible from the record in this case, in which the history and circumstances surrounding this litigation and leading to the entry of the instant consent decree can be found. The suit which led to the entry of the decree was filed in 1976; after eight years of bitter and contentious litigation a settlement that both parties found acceptable was reached. This settlement, embodied in the consent decree, lays out specific terms and conditions of employment. The consent decree unambiguously states in three places that Landrum was to be reinstated only through the academic year in which he reached the age of sixty-five, with a terminal leave year to follow. Even Landrum does not contend that there was any age-related animus with regard to the negotiations surrounding the consent decree.[5] EKU candidly admits that it negotiated for the shortest period of reinstatement time possible; not because they felt that Landrum was too old to be a professor at EKU, but because they simply did not want him to teach at EKU. The district court specifically found that,
 
 
 28
 in considering the pleadings, depositions and affidavits in this record, the Court finds no factual basis for the Plaintiff's claim that his leave-taking from EKU was motivated by age discrimination. There is ample evidence to support the Defendants' contention that Plaintiff was not well-liked and had in fact been a thorn in the side of the EKU administration for nearly 15 years. The Plaintiff has presented no evidence which shows that the negotiation of the consent decree was used by the Defendants in a way to violate the Plaintiff's rights to not be discriminated against on the basis of his age.
 
 
 29
 Whatever the reasons for EKU's animosity toward Landrum, we may only concern ourselves with evidence of impermissible discrimination. This Circuit has held that "[p]ersonality conflicts alone cannot supply a basis for an ADEA claim. 'An employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory.' " Ackerman, 670 F.2d at 70 (quoting Walter v. KFGO Radio, 518 F.Supp. 1309, 1314 (D.N.D.1981)). As the district court correctly pointed out, Landrum has failed to present any evidence indicating that age-related animus played a part in the negotiations surrounding the settlement and entry of the consent decree.[6] At best, Landrum presents evidence of a strong personality conflict between himself and EKU officials. After a careful review of the record we find that Landrum was terminated in reliance on and entirely in conformity with the terms of the consent decree. Furthermore, we find that there is no evidence that EKU discriminated against Landrum on the basis of his age; therefore, summary judgment as to this claim was proper.
 
 
 30
 Landrum also alleges that EKU's refusal to rehire him was the result of discrimination on the basis of his age. The district court allowed this issue to go a jury that determined EKU had not discriminated against Landrum. Landrum then moved for judgment notwithstanding the verdict on this issue, which was denied by the district court. The district court noted:
 
 
 31
 The sole evidence presented at trial to support Landrum's assertion that he was discriminated against on the basis of his age was Landrum's testimony regarding statements that Charles Hilton had allegedly made to Landrum. Landrum testified that Hilton said he did not want "old farts like you (Landrum) stinking up the place," and also alleged that Hilton said that the Department of Business had a policy not to allow professors to teach after the age of 65. Hilton denied making the statements.
 
 
 32
 After a careful de novo review of the record we find no additional evidence of age discrimination which would permit to set aide the jury's verdict.[7]
 
 B. Landrum's Contractual Discharge Claims
 
 33
 Landrum next argues that his termination by EKU violated contractual provisions of the consent decree. Specifically, Landrum asserts that the district court erred in instructing the jury that the 1980 version of EKU's Faculty Handbook was the version referred to in the consent decree.
 
 
 34
 The contractual discharge claims asserted by Landrum stand or fall depending upon which version of the EKU Faculty Handbook controlled at the time of Landrum's termination. The EKU Faculty Handbook is published by the Office of the President of EKU and is intended for the use of faculty and administrative staff. The handbook in effect at the time the consent decree was entered contained the following language regarding EKU's tenure policy:
 
 
 35
 Attainment of tenure status by a faculty or staff member shall remain in effect until age 65, or unless just cause shall be shown for terminating such status. After age 65, an annual contract may be tendered to the employee until the mandatory retirement age of 70. Tenure status shall remain in force during good behavior and efficient and competent service and shall not be terminated except for any one of the following causes: incompetency, neglect or refusal to perform his duty, or for immoral conduct. In addition, bona fide financial exigencies may be cause for termination of tenure status.
 
 
 36
 In 1978, Congress amended the ADEA, 29 U.S.C. Sec. 631(d), to provide: "Nothing in this Act shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age but not 70 years of age, and who is serving under a contract of unlimited tenure ... at an institution of higher education...." Act of April 6, 1978, Pub.L. No. 92-256, 1978 U.S.C.C.A.N. (92 Stat.) 190. By the terms of the amendment, Sec. 631(d) was automatically repealed on July 1, 1982. Id. EKU incorporated the above language into its tenure policy in 1980, in the middle of the four year window when such a policy was permissible. Once 29 U.S.C. Sec. 631(d) expired on July 1, 1982, EKU was obligated to treat tenured employees in the same fashion as any other employee; that is, EKU could not take adverse employment actions against any employee between the ages of 40 to 70, based on that employee's age. In 1986, the Congress once again amended the ADEA reinstating Sec. 631(d); however, this incarnation provides: "Nothing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained 70 years of age, and who is serving under a contract of unlimited tenure ... at an institution of higher learning." In 1987, EKU revised the language of its handbook to conform with the ADEA and state law.
 
 
 37
 While the various amendments to the ADEA, and the fact that EKU's handbook contained improper language for a period of five years, are interesting from an academic perspective, they have no bearing on the outcome of this action. The evidence in this case is clear, as we indicated in our discussion of the age discrimination claims, that age was not a factor in EKU's decision to reinstate Landrum for the shortest period of time possible.
 
 
 38
 The district court instructed the jury that, as a matter of law, the term "EKU Faculty Handbook" referred to the 1980 version of the document; that is, the version which specifically stated that professors only retained full tenure rights until age 65. Specifically, the district court found that "[t]he term of the consent decree which referenced the EKU Handbook referred to the handbook in existence at the time the parties signed the consent decree--the 1980 version. Any other construction would be illogical and contrary to law." This is a mixed question of fact and law. We review the district court's factual determinations for clear error and its determinations of law de novo.
 
 
 39
 Landrum asserts that the district court erred in instructing the jury that the 1980 version of the handbook controls the terms of the consent decree. Landrum contends that the 1987 amendment to the handbook extending tenure of professors to age 70, extended his tenure rights to age 70 as well. We cannot agree. As explained above, a consent decree is to be construed as a contract. There is no indication on the face of the consent decree that the parties intended that the terms and conditions of Landrum's employment be subject to any amendments or subsequent changes in the handbook. And, even if other terms and conditions of employment were intended to be subject to amendment of the handbook, it is clear that the tenure of Landrum's reinstatement was not. In three separate places on the face of the consent decree the parties unambiguously expressed their intent that Landrum's tenure terminate on his 65th birthday, with a year of terminal-leave-with-pay to follow. The terms of the consent decree are clear and unambiguous and the district court's factual determinations and its instructions to the jury were not in error.
 
 
 40
 Landrum also contends that EKU's refusal to rehire him was in violation of his contractual rights. Landrum correctly notes that the consent decree "indicates a possible continuing relationship between EKU and Dr. Landrum...." The consent decree provides that after the termination of the terminal-leave-year, "Landrum will no longer have any employment status with Eastern Kentucky University, unless he is voluntarily rehired by the university pursuant to a separate contract of employment." Utilizing this language, Landrum reasons that since "it is undisputed that Dr. Landrum wanted to continue teaching at EKU[,]" and since "[i]t is also undisputed that during this period EKU invariably hired any tenured professor on annual contracts from ages 65-70 who wanted and was willing to teach," then "EKU had no choice but to rehire Dr. Landrum from ages 66-70." But Landrum provides no evidence that EKU "invariably" hired these professors on annual contracts because it was required to do so, and his logic therefore fails. Once the Consent Decree expired, Landrum assumed the posture of any other applicant for a teaching position at EKU. Landrum asserts that his agreement to the consent decree was specifically conditioned upon oral representations by EKU that he would be rehired from ages 66-70; however, he presents no such evidence, other than his own statements, and the plain language of the consent decree directly contradicts his assertion.
 
 II.
 
 41
 Landrum next argues that a number of errors occurred in the trial of his claims of discriminatory failure to rehire and contractual discharge. Specifically, Landrum asserts that it was error for the trial court to fail to grant his motion in limine as to evidence of Landrum's other litigation; that it was error for the trial court to refuse to allow Landrum to call a particular rebuttal witness; that the trial court erred in failing to give Landrum's proposed jury instructions concerning pretext; and, that the jury's verdict for EKU on the retaliatory discharge claim was not supported by the evidence. Finding no merit in any of these assertions of error, we address them only briefly.
 
 A. The Motion in Limine
 
 42
 Landrum moved to exclude any evidence concerning other litigation in which he was or had been involved. In a pretrial hearing, the district court determined the evidence was relevant and probative to the facts of this case and therefore held it admissible. However, the court did limit the introduction of such evidence to EKU's cross-examination of Landrum. The issue also arose on the cross-examination of Dr. Lynch, Landrum's expert witness.
 
 
 43
 Landrum asserts the introduction of this evidence, which he characterizes as highly prejudicial and inflammatory, engendered unfair animosity against him and caused the jury to render its verdict under the influence of passion and prejudice. We disagree. The district court limited discussion of this topic to the cross-examination of Landrum himself. The one question that was put to Landrum's expert witness, Lawrence Lynch, was posed in the form of a hypothetical and did not directly address Landrum's other law suits. The trial court did not abuse its discretion by allowing this evidence to go to the jury, particularly since the court limited its use during the trial.
 
 B. The Rebuttal Witness
 
 44
 Shortly before trial commenced Landrum claimed to have discovered the "smoking gun" in relation to his retaliation claim. According to Landrum, Giles Black, counsel for EKU, had made statements to an investigator for the Kentucky Human Rights Commission indicating that Landrum had been fired in retaliation for his earlier lawsuit against EKU. Due to the late hour of the disclosure of this information, the court ruled that the investigator's testimony could be used only in rebuttal and only in the event that the import of the testimony was previously denied.
 
 
 45
 Landrum did not call Black as a witness during his case in chief, although he was avaialble, nor did Landrum put forward any evidence as to what Black may or may not have said. When Landrum attempted to call Black as a rebuttal witness, the trial court refused to permit him to do so, since "[w]ithout a foundation, Black could not properly have been called as a rebuttal witness." The trial court "[i]n the exercise of sound discretion ... may limit the scope of rebuttal testimony...." Martin v. Weaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982). Here, the trial court did not abuse its discretion by refusing to allow Landrum to call Giles Black as a rebuttal witness.
 
 C. Proposed Pretext Instructions
 
 46
 Landrum argues that the trial court should have given his requested pretext instruction. Landrum asserts that the instruction actually given was ambiguous and erroneous. Under Landrum's proposed instruction, the jury would find for him if age was a "substantial or motivating factor[;]" whereas, the court actually instructed the jury that Landrum only had to prove that age "played a part" in the decision making process, a much lower standard. The trial court's instruction properly laid out the law.
 
 D. Sufficiency of The Evidence
 
 47
 Landrum's final claim is that the jury's verdict for EKU on the retaliatory refusal to hire claim was not supported by the evidence. This Court must "view the evidence in the light most favorable to the opposing party, drawing all reasonable inferences in her favor." In Re Lewis, 845 F.2d 624, 632 (6th Cir.1988). We will not overturn a jury's verdict unless "reasonable minds could not differ as to the conclusions to be drawn from the evidence." Id. We find that there was more than sufficient evidence for a jury to reach the verdict that it did; therefore, we will not disturb it.
 
 III.
 
 48
 After a careful review of the record and the pleadings, we are convinced that summary judgment was properly granted and that none of Landrum's allegations of error at trial possesses merit. The February 26, 1992, order granting summary judgment and the August 26, 1992, order overruling all assignments of error at trial are hereby AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 623(a), provides as follows:
 It shall be unlawful for an employer--
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
 (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals age....
 
 
 [2]
 The Kentucky prohibition against age discrimination is found in Ky.Rev.Stat.Ann. Sec. 344.040. Section 344.040 provides, in pertinent part:
 It is unlawful practice for an employer:
 (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... age between forty (40) and seventy (70), or
 (2) To limit, segregate, or classify employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee, because of such individual's ... age between forty (40) and seventy (70).
 
 
 [3]
 The district court held that the consent decree embodied the full agreement between Landrum and EKU; in effect, the settlement agreement was merged into the consent decree entered by the court. Landrum does not appeal the dismissal of his claims arising from breach of the settlement agreement
 
 
 [4]
 We note that were we to address the issue, it is questionable whether the facts of this case do establish a prima facie case of age discrimination due to some doubt over whether Landrum was actually discharged or if his term of employment under the consent decree simply expired; however, as explained infra, we decline to reach this issue
 
 
 [5]
 Landrum asserts that Levine v. Fairleigh Dickinson Univ., 646 F.2d 825 (3rd Cir.1981), is helpful authority to aid us in our review. In Levine, the Third Circuit held that a federally sanctioned bargaining agreement did not preclude a professor whose employment was governed by the agreement from bringing suit under the ADEA. The bargaining agreement in Levine forced the plaintiff to accept a lesser position at lower pay upon reaching the age of 65. The district court did not consider Levine applicable, stating that "in Levine both the plaintiff and defendant agreed that Dr. Levine had been fired solely on the basis of his age." In contradistinction, it is clear that no such agreement exists here. Indeed, defendants contend most strenuously that age played absolutely no part in Landrum's termination and subsequent denial of further employment. We agree with the district court that Levine is inapposite to the facts at hand
 
 
 [6]
 Because we find no evidence indicating discriminatory intent on the part of EKU, we decline to address the parties' arguments that Landrum did or did not waive his ADEA claims by agreeing to the terms of the consent decree
 
 
 [7]
 Landrum makes much of the fact that he was apparently the only professor in his age group, who was willing and able to teach, who was not offered a year-to-year extension of his contract. This evidence, if it has any value at all, militates toward a finding that Landrum's problems with EKU had absolutely nothing do to with his age