869 F.2d 1494
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Emory WHITE, Plaintiff-Appellant
v.
AT & T INFORMATION SERVICES, INC., Defendant-Appellee
 No. 87-6331.
 United States Court of Appeals, Sixth Circuit.
 Feb. 3, 1989.
 
 Before MERRITT and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this age discrimination case arising from a reduction in force because of the reorganization of the defendant AT & T, the district court has written a comprehensive opinion holding that the plaintiff has not proffered facts which would support a claim under federal law for age discrimination or a claim under state law. Upon review of the briefs and record in the case, and after oral argument, the Court is of the view that the district court did not err in granting summary judgment to the defendant. For the reasons well stated in the district court's opinion, the judgment of the district court is affirmed. The opinion of the district court is attached hereto and made the basis of our decision.
 
 
 2
 Accordingly, it is so ordered.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE EASTERN DISTRICT OF TENNESSEE
 SOUTHERN DIVISION
 
 3
 EMORY WHITE, Plaintiff,
 
 
 4
 v.
 
 
 5
 AT & T INFORMATION SERVICES, INC., Defendant.
 
 CIV-1-86-430 and CIV-1-86-465
 
 6
 Oct. 30, 1987.
 
 MEMORANDUM
 
 7
 The parties are before the Court pursuant to the motion (Court File No. 14) of AT & T Information Services, Inc. (hereinafter "AT & T") for summary judgment in this matter. In support of its motion, AT & T has filed the affidavits of J.R. Keylon and Joe W. Rogers, employees of the defendant with personal knowledge of the events giving rise to plaintiff's claims. See Court File Nos. 17, 18. The affidavits are supplemented with exhibits containing documentation relevant to the defendant's employment procedures. In opposition to AT & T's motion, the plaintiff (hereinafter "White") asserts that "the policies and procedures which set up the guidelines for the termination of employees were discriminatorilly [sic] used by the supervisors and management personnel of the Defendant." Plaintiff's Brief in Opposition, Court File No. 20.
 
 
 8
 ATTEST: A true copy. Certified this OCT 30 1987
 
 KARL D. SAULRAW, JR., CLERK
 
 9
 /s/by Carol McDonald
 
 
 10
 ??
 
 Facts
 
 11
 This is an age discrimination suit brought by the plaintiff against his former employer, AT & T, under 29 U.S.C. Secs. 621 et seq., the Age Discrimination in Employment Act of 1967 ("ADEA") and the Tennessee Fair Employment Practices Act, T.C.A. Secs. 4-21-101 et seq. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1331 and 29 U.S.C. Secs. 621 et seq. over the federal law claim. The Court will exercise pendant jurisdiction over White's state law claim as well. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).
 
 
 12
 The circumstances giving rise to White's claim result from employee force reductions apparently necessitated by the court ordered breakup of AT & T and its regional subsidiaries. The affidavits which were submitted in support of AT & T's motion reveal that White's position as a field services manager for AT & T Information Services was eliminated as "surplus" in 1985 in the normal course of what AT & T terms a "downsizing" of its work force. AT & T's affidavits thoroughly set out the economic and legal causes for its reductions in force since the well known 1982 AT & T court divestiture decree became effective in 1984.
 
 
 13
 In 1984, AT & T developed policies and procedure for implementing the employee force downsizings of both managerial and service employees. See p 9 of Rogers' Affidavit, Court File No. 18. Based on the employment policies developed and its operational needs, AT & T reduced its employee work force in 1984 and 1985, and through 1987. Id. p 8. After upper management determined the size of the force reductions for the various branches of AT & T, individual positions within the force were declared "surplus." In order to select the employees whose positions would be "surplus," AT & T policies and procedures required that each field service manager in an affected area be ranked by seniority and performance. Id. p 10 and p 11. In many instances, there existed more than one employee performing the same job within the same service area. For example, a field service manager, such as White, had responsibility for direct supervision of a number of service technicians who performed service calls and installations for customers within the service area. As the number of service technicians was reduced, the need for field service managers also decreased. Thus, the force downsizings reduced both the number of managers and technicians within the service area. Id. p 8-12. Plaintiff's position was declared surplus in this manner.
 
 
 14
 Under AT & T policies, those employees with "enough seniority" were found not to be "at risk" of termination from employment; but in cases where an employee with seniority was working in a position determined "surplus," he would likely be retained but required to move to another job location. Id. p 14 and n. 4. AT & T asserts that plaintiff was not "at risk" of outright termination apparently because of his seniority status. See Affidavit of J.R. Keylon, Court File No. 17, at p 11. White was a continuous employee of AT & T or its subsidiary, South Central Bell, for over 30 years. See deposition of Emory White, June 10, 1987, at 89. According to the Keylon affidavit, White was told he could have another position paying the same salary but at another location after the determination was made that his position was surplus. In his deposition filed with the Court, White admits that one of his options at the time he was informed his job was surplus was to continue his employment with AT & T. See White Deposition at 82.[1]
 
 
 15
 AT & T has provided extensive evidence relevant to the basis upon which White's position was declared surplus. According to AT & T policies contained in the "AT & T-IS Policy" and "Services Practice" guidelines (Exhibits 1 and 2 to Rogers' Affidavit, Court File No. 18), field service managers who had received merit awards or who possessed special training or skills were "protected" from the force reductions. See Rogers Affidavit, Court File No. 18, paragraphs 10-12. In White's case, the decision on which of two equivalent positions would be determined surplus in the Chattanooga area was based on the determination that one employee was within this "protected" class. Under AT & T guidelines, White was not "protected" because he had never received a merit award nor did he possess a "critical skill." See Keylon Affidavit, Court File No. 17, paragraphs 7-10. White challenges as discriminatory the policies and procedures under which merit awards and skill opportunities were offered to management employees in his affidavits in opposition to AT & T's motion. See Court File Nos. 21, 26.
 
 
 16
 Contained in the AT & T policies and procedures for the force reductions are provisions for employees subject to the downsizing to choose voluntary resignation or early retirement. A specific incentive plan was offered to each management employee within a work group subject to reduction from downsizing prior to the announcement of a major force reduction by AT & T, in an effort to encourage voluntary reductions. See Rogers Affidavit, Court File No. 18, paragraphs 14-15. The plan, referred to as the "Management Income Protection Plan (MIPP)," offered monetary incentives to management employees choosing to leave employment with AT & T voluntarily, either by resignation or early retirement. The plan included up to one year's salary payable in a lump sum or monthly, and continued medical benefits. Id. at p 14. White was eligible for termination pay of $37,300 and continued medical insurance.
 
 
 17
 The record shows that after being told of the decision to declare his position surplus, White became interested in and subsequently accepted the "MIPP" offering. Id. at p 15. The Rogers' affidavit and White's deposition further show that plaintiff was eligible for and receives a monthly pension from AT & T in addition to the $37,300 payable under MIPP. Id. at p 16 and White depos. at 89-90.
 
 AT & T's Motion for Summary Judgment
 
 18
 Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted if, based on the record as a whole, there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party "bears the burden of clearly and convincingly establishing the non-existence of any genuine issue of material fact, and the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.1986).
 
 
 19
 However, "[o]nce the moving party presents evidence sufficient to support the motion under Rule 56(c), ... [t]he nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Gregg v. Allen-Bradley Co., 801 F.2d 859, 861 (6th Cir.1986). If, after reviewing the evidence, it appears that no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 20
 The facts of this case are strikingly similar to those of LaGrant v. Gulf & Western Mfg. Co., Inc., 748 F.2d 1087 (6th Cir.1984). In LaGrant, the plaintiff was laid off by his employer after the decision was made to combine two existing departments into a single department. The consolidation move was made in order to reduce the employer's work force in a period of serious economic downturn. LaGrant, 748 F.2d at 1088-89. The court in LaGrant affirmed a district court order granting summary judgment for the employer, finding the plaintiff employee failed to establish a prima facie case of age discrimination under ADEA. As the Court noted, "LaGrant testified that he believed age played a part in his termination because he could think of no other reason for the decision." Id. at 1090. LaGrant admitted in his deposition that he could offer no specific evidence to support his claim of age discrimination. Id. In contrast to plaintiff's testimony, the LaGrant court cites to the deposition testimony of LaGrant's superiors at Gulf & Western that indicated the decision to lay LaGrant off was based on qualifications, job performance and the fact that the new position created was one very similar to responsibilities from which LaGrant had previously asked to be relieved. Id. at 1089. Additionally, all three managers involved in the decision to eliminate LaGrant's position "testified by deposition that age was not a factor and did not enter into the discussions leading to LaGrant's termination." Id. at 1089-90.
 
 
 21
 The positions of the parties in the instant suit is remarkably similar to that in LaGrant in that here, White has articulated no specific evidence beyond his own speculative conclusions that age was a motivating factor in AT & T's decision to declare his position surplus. Plaintiff's affidavits are devoid of substantive factual evidence to contradict the deposition testimony of AT & T that age was not a factor in its force reduction and the elimination of White's position. See Affidavits of White, Court File Nos. 21, 26 and Affidavits of Keylon and Rogers, Court File Nos. 17, 18. In addition, AT & T has produced abundant documentation and evidence of its employment reduction policies and specific bases upon which AT & T determined that White's position was surplus. See Affidavits of Keylon and Rogers, heretofore cited. AT & T asserts that its decision was based solely on past and potential job performance and qualifications, in addition to the necessity of downsizing its work force. In his deposition, White admits that he recognizes the superior qualifications of the employee retained as the sole field service manager by AT & T. See White Depos. at 95-96.
 
 
 22
 "A prima facie case is one where there is sufficient evidence to withstand a motion for summary judgment...." LaGrant, 748 F.2d at 1090. One formulation of a prima facie case under ADEA is that the plaintiff must show:
 
 
 23
 (1) He was a member of the protected class, i.e., between 40 and 70; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person.
 
 
 24
 LaGrant, 748 F.2d at 1090 (citing Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir.1982)). See also Wilkins v. Eaton Corp., 790 F.2d 515 (6th Cir.1986). While the Sixth Circuit does not require adherence to any particular recipe for a prima facie case, LaGrant, 748 F.2d at 1090; Rose v. National Cash Register Corp., 703 F.2d 225, 227 (6th Cir.), cert. denied, 464 U.S. 939 (1983); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982), it is nevertheless clear that when the underlying cause of the employee's termination is corporate reorganization or reduction in force:
 
 
 25
 The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination. (Citations omitted). The plaintiff in such reorganization cases must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination in order to establish a prima facie case.
 
 
 26
 LaGrant, 748 F.2d at 1090-91 (citations omitted). See also Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986); Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 (6th Cir.1980). The Court does not find that the plaintiff in this action has met his burden.
 
 
 27
 In response to AT & T's motion and supporting affidavits, White offers nothing more than bald assertions of his subjective belief that age was a factor in the decision to retain another employee in the remaining field service manager position. See Court File No. 21. "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination." Chappell v. GTE Products Corp., 803 F.2d 261, 268 (6th Cir.1986). White's affidavit focuses on his conclusions that AT & T's policies and guidelines in implementing its downsizing were discriminatory without any probative evidence in support. White alludes only to potential subjective biases that he asserts affected discriminatory employment policies. Specifically, he asserts that "special merit awards" and "critical skills" opportunities were affected, in his case, by the subjective manner in which such awards and training were presented to certain employees by AT & T. The Court finds that AT & T has provided sufficient testimonial and documentary evidence regarding its merit guidelines, to rebut White's conclusory allegations. Clearly, "[t]he ADEA did not change the fact that an 'employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory.' " Wilkins v. Eaton Corp., 790 F.2d 515, 521 (6th Cir.1986) (citations omitted) (emphasis added). In any event, the Court notes that the White affidavit fails to specifically assert that age was a factor in the plaintiff's allegation that AT & T's policies are discriminatory. See Court File No. 21.
 
 
 28
 In addition, the Court finds that White has failed to prove another essential element of his prima facie case--that being proof that White was "discharged" from his employment. As the courts of this circuit have stated,
 
 
 29
 The plain meaning of Rule 56(c) [of the Fed.R.Civ.P.] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."
 
 
 30
 Ruth v. Allis-Chalmers Corp., No. 86-5555, slip op. (6th Cir. June 11, 1987) (LEXIS, Genfed library, USAPP file) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986)). The Court does not find that White was discharged by AT & T; instead, sufficient probative and uncontroverted evidence in the record indicates that White had the option to remain with AT & T at an equivalent position and salary because he was not "at risk" of termination. AT & T has produced sufficient testimonial and documentary evidence of the voluntary nature of plaintiff's decision to accept "MIPP" benefits and his pension rather than wait for a transfer within AT & T. See p 13 and Exhibits 5-9 to Rogers' Affidavit, Court File No. 18. White's deposition reflects that he carefully considered his options under "MIPP" and was apparently unwilling to wait for specific information regarding a transfer. See White Depos. at 90-93. White further admits that information about the procedure for relocation was contained within the "MIPP" packet he consulted when making his decision to leave AT & T. See White Depos. at 81-83.
 
 
 31
 The deposition testimony of the witnesses in this case reflects that sometime between September 1 and September 16, White was informed of the downsizing and given his "MIPP" packet explaining his options upon being declared surplus. See White Depos. at 77-80; Keylon Affidavit at p 11; Rogers Affidavit at p 15. The Keylon affidavit further reflects that White was told he was not "at risk" and that he would be retained in another location. Keylon Affidavit at p 11. This testimony is not controverted by significant probative evidence. The record further reflects that White, along with all other field service managers in his division, was given until October 4, 1985 to make his election to stay with AT & T or take the "MIPP" benefits. Id. White has offered no allegations or evidence in support of a claim that his choice was anything other than voluntary. He did in fact receive, and continues to receive, retirement benefits in addition to the sizeable termination payment made to him under MIPP. The Court does not find that the record supports the conclusion that White was "discharged" from his employment with AT & T.
 
 
 32
 In summary, Emory White, has failed to satisfy his burden to demonstrate a prima facie case of age discrimination.
 
 
 33
 T.C.A. Secs. 4-21-101 et seq. is the state counterpart to the federal ADEA statute. According to Tennessee case law,
 
 
 34
 [t]he Tennessee legislation specifically states that 'it is the purpose and intent of the general assembly by this enactment to provide for execution within Tennessee of the policies embodied in the Federal Civil Rights Acts of 1964, 1968 and 1972 and the Age Discrimination in Employment Act of 1967, as amended....
 
 
 35
 T.C.A. Sec. 4-21-101. Bruce v. Western Auto Supply Co., 669 S.W.2d 95 (Tenn.App.1984). The Tennessee courts construe the Tennessee statute according to the federal caselaw and statutes. Id. Accordingly, this Court will apply the same standard in construing the plaintiff's state claim as has previously been applied to the federal claim.
 
 
 36
 For these reasons, the motion (Court File No. 14) of AT & T for summary judgment in this matter will be GRANTED. An appropriate order will enter.
 
 
 37
 /s/R. ALLAN EDGAR
 
 UNITED STATES DISTRICT JUDGE
 
 
 [1]
 White's deposition indicates that he did not recall being offered a specific job with AT & T after being surplused, but that his option to remain with the company was made known to him through the "MIPP" packet of information (Depos. at 83) and his subsequent conversations with Mr. Keylon (Depos. at 83) and Mr. Ford (Depos. at 87). The Keylon affidavit also indicates that White requested to know where he would be transferred, but that such information was not available at the time of his request. See Court File No. 17, p 11 of Keylon affidavit