946 F.2d 894
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry DANELISHEN, Plaintiff-Appellant,
v.
Anthony M. FRANK, Director of United States Postal Service,
Defendant-Appellee,
 No. 91-3047.
 United States Court of Appeals, Sixth Circuit.
 Oct. 7, 1991.
 
 Before BOYCE F. MARTIN and MILBURN, Circuit Judges, and JOINER, Senior District Judge, Jr.*
 PER CURIAM.
 
 
 1
 Larry Danelishen appeals the district court's ruling that the United States Postal Service did not improperly refuse to hire Danelishen. Danelishen also appeals the district court's determination that, even if he demonstrated an improper refusal to hire, his failure to mitigate damages precludes any relief. Because we affirm the district court's initial determination regarding the refusal to hire claim, we will not address the district court's conclusion regarding Danelishen's alleged failure to mitigate damages.
 
 
 2
 Danelishen claims that the USPS's refusal to hire him was in retaliation for Danelishen's filing of various charges with the Equal Employment Opportunity Commission when the USPS employed Danelishen in another position. To understand the legal arguments, we must present the lengthy factual history of the case.
 
 
 3
 In 1981, Danelishen received an honorable discharge from the military following a work-related injury that rendered him 30 per cent disabled in his left knee. He sought employment with the Hinesville Post Office in 1982. Although the Hinesville Post Master, Herbert Decker, initially wanted to hire Danelishen, Decker changed his mind after learning of Danelishen's disability. Danelishen filed charges against the Hinesville Post Office for discriminating on the basis of his disability. In exchange for dropping these charges, the Hinesville Post Office eventually agreed to hire Danelishen.
 
 
 4
 Danelishen's employment in Hinesville was tumultuous from the start and the parties agree that Danelishen and Decker were incompatible. Danelishen was also extensively involved with union activities and this interfered with his work duties. During his employment in Hinesville, Danelishen oversaw the filing of 125 grievance complaints against the USPS, some of which were his own. During this time, Danelishen also oversaw the filing of 10 EEOC complaints. One day, in 1986, Danelishen was told by a supervisor to stop working on union complaint forms while on the job. When he refused to do as ordered, an altercation ensued and Danelishen allegedly assaulted the supervisor. The USPS susbsequently put Danelishen on administrative leave without pay, pending termination. Through his union, Danelishen sued the USPS for this action and the claim was arbitrated. Under the terms of the arbitration agreement, Danelishen agreed to resign and to withdraw all claims against the USPS. In return, the USPS agreed to remove all negative information regarding the altercation from his official personnel file and to reinstate certain back pay.
 
 
 5
 In 1987, Danelishen moved to Cleveland and again sought employment with the USPS. He contacted the Berea Post Office and was interviewed for two temporary appointments. Danelishen was offered the temporary position in both instances, but rejected the offers. In late 1987, he interviewed for a career job at the Berea Post Office with Berea Post Master Matthew Smith. Smith indicated he wanted to hire Danelishen but would have to review his personnel file from Hinesville first.
 
 
 6
 When the Main Post Office in Cleveland received Danelishen's personnel file, they contacted Smith and informed him that Danelishen's file contained two "Form 50 Notices" and that one of these notices read "Resignation Charges Pending." After examining these reports, Smith called Decker to get his impression of Danelishen's employability. Decker told Smith that Danelishen was a troublesome employee and had assaulted his supervisor. Smith also spoke with a local supervisor who had interviewed Danelishen for one of the temporary positions in Berea. That supervisor expressed doubt as to Danelishen's sincerity and honesty.[1] Smith subsequently decided not to employ Danelishen.
 
 
 7
 In January of 1988, Danelishen received word from the Main Post Office in Cleveland that his request for reinstatement was denied. Danelishen, however, thought he was being considered as a "new hire" at the Berea Post Office. Thus, he believed the January letter of denial was irrelevant to the Berea situation and that he was still going to be employed by Berea. In July of 1988, Danelishen called Smith and learned that Smith was not going to hire him for the Berea job. Thereafter, Danelishen instituted an EEOC charge against the USPS for unlawful retaliation in refusing to hire him for the Berea position.
 
 
 8
 The EEOC administrative law judge found that there was no prima facie case of handicap or reprisal and that, even if there had been, the USPS had given legitimate, non-discriminatory explanations for its refusal to hire Danelishen. The EEOC adopted these recommended findings and concluded that Danelishen had not experienced any discrimination. At roughly the same time, Danelishen won an arbitration award against the USPS for breach of the 1986 arbitration agreement. The arbitrator found that the USPS violated the 1986 agreement by failing to instruct Decker to refrain from discussions such as he had with Smith, and by not removing the negative information from Danelishen's personnel file. The arbitrator found that Danelishen had not mitigated damages and limited Danelishen's award to $10,000.
 
 
 9
 Danelishen's initial burden in this Title VII case is to present prima facie evidence that 1) he was engaged in a protected activity, 2) such activity was known to Smith, 3) Smith took employment action adverse to Danelishen, and, 4) there is a causal connection between Danelishen's protected activity and the adverse employment action by Smith. Canitia v. Yellow Freight Sys., 903 F.2d 1064 (6th Cir.1990). The district judge found that Danelishen made a "marginal" prima facie showing that allowed the suit to go to trial. Once Danelishen made his prima facie case, the burden shifted to the USPS to articulate a legitimate, non-discriminatory reason for its adverse employment action. McDonnel Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Where such a showing is made, the plaintiff can only prevail by showing that the employer's proof is mere pretext. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). The plaintiff must make this showing by way of direct, indirect, or circumstantial evidence that the adverse employment treatment was the result of a retaliatory motive. Gayne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314 (6th Cir.1989). This showing must demonstrate that the retaliatory decision would not have been made "but for" the protected status of the plaintiff. Canitia, 903 F.2d at 1068.
 
 
 10
 Upon completion of the trial, the court determined that the government had presented evidence to support its position that it had a legitimate, non-retaliatory basis for its adverse employment decision against Danelishen. In turn, Danelishen failed to rebut the government's presentation of such evidence. Accordingly, because "Danelishen's testimony as a whole is simply not credible," the district court ruled in favor of the government.
 
 
 11
 Undisputed facts and the testimony of Decker and Smith demonstrate that Decker had legitimate, non-retaliatory reasons for responding to Smith's inquiry in the manner in which he did. The district court found Decker to be unaware of the Form 50 improperly within Danelishen's personnel file, as Decker had been transferred to another postmaster position prior to filing of the form. Also, Smith's testimony persuaded the court that Smith had no knowledge of Danelishen's EEOC activity prior to Smith's determination not to hire Danelishen and so there was no causal connection between Smith's adverse employment determination and Danelishen's EEOC activity. Because Danelishen's testimony and the evidence did not demonstrate that the government's explanation was "mere pretext," the district court ruled in favor of the USPS. See Burdine, 450 U.S. at 248. The district court's findings in this regard were not clearly erroneous and are affirmed.
 
 
 12
 The core dispute to this litigation involves the trial court's perception of the motivations behind Decker's revelations to Smith. The USPS's violation of the arbitrator's order and the $10,000 damage award to Danelishen are not material to the issue of whether there was a retaliatory motive in Decker's statements to Smith. Not only is the compliance award a contract dispute and therefore a legally distinct issue, but the arbitrator also made no consideration of Danelishen's separately filed retaliation claim. In contrast, the EEOC did specifically consider Danelishen's retaliation claim and found no causal connection between his EEOC activities and the USPS's refusal to hire him.
 
 
 13
 The standard for review of district court action under Title VII discrimination cases is the clearly erroneous standard of Fed.R.Civ.P. 52(a):
 
 
 14
 [The] question is not whether the finding is the best or only conclusion ... Rather, the test is whether there is evidence in the record to support the lower court's finding and whether its construction of that evidence is a reasonable one.
 
 
 15
 Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir.1985). Under this standard, given the facts of this case and the evidence presented, the district court did not err by ruling against Danelishen. The district court determined that "Decker's testimony as a whole, viewed in conjunction with that of Danelishen, is entirely credible" and that "Smith's testimony is both credible and unrefuted." Admittedly, Decker was "motivated by an acute dislike of Danelishen engendered by Danelishen's general attitude and his persistent use of his employer's time to pursue his unending series of grievances and complaints." The court nonetheless concluded that this was not equivalent to retaliation:
 
 
 16
 [T]here is a very real distinction to be drawn between Decker's resentment of Danelishen's filing of those charges, and his anger at Danelishen's persistence in spending his work hours making notes about the activities of which he complained in the EEOC charges and the myriad of union grievances and document requests. While the former would clearly be an impermissible motivation for taking adverse employment action, the latter would not.
 
 
 17
 And, as we ruled in Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982), an age discrimination case, personality conflicts alone will not supply a basis for a discrimination claim.
 
 
 18
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 During the interview for a temporary position, Danelishen claimed he could not work in warm rooms because it would make his hands swell, that he could not work outside in the winter because it would make his hands crack, and that he could not take a night position because he would be going to school at night. Danelishen mentioned none of these problems to Smith when Smith interviewed him for the permanent position