[Cite as *Boyd v. Ohio Dept. of Health*, 2010-Ohio-4306.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MICHAEL BOYD

    Plaintiff

    v.

OHIO DEPARTMENT OF MENTAL HEALTH

    Defendant
    Case No. 2007-03587

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff brought this action alleging racial discrimination and wrongful discharge in violation of public policy. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff, an African American, testified that he began working for defendant, Ohio Department of Mental Health, in 1985 as a police officer and that he was ultimately promoted to the rank of chief of police at Heartland Behavioral Healthcare (HBH), an unclassified position. Prior to working at HBH, plaintiff had served as a lieutenant at Northcoast Behavioral Healthcare (NBH). During his employment at HBH from April 17, 2001, until May 19, 2004, plaintiff reported directly to Helen Stevens, the CEO of HBH. Plaintiff's duties included service on Stevens' executive leadership team and several other HBH committees.

{¶ 3} On July 1, 2003, plaintiff began a 90-day medical disability leave as a result of a herniated disc and back surgery. From September through December 2003, plaintiff worked in a part-time "transitional work program" which permitted him to perform

some of his duties at home, including revising an operations manual for the police department. While plaintiff was on disability leave, Quintin Geary, the former police chief at NBH, agreed to work one day a week at HBH to perform some of plaintiff's administrative duties. Plaintiff testified that he had worked with Geary at NBH and that he supported defendant's decision to hire Geary to fill in for him while he was on leave.

{¶ 4} On March 10, 2004, plaintiff began an investigation in response to a complaint that an HBH employee had wrongfully allowed a forensic patient to escape while being transported to a local hospital without a police escort. HBH's Incident Review Committee (IRC), of which plaintiff was a member, met weekly to discuss such incidents. The IRC reviewed the March 10, 2004 complaint and determined that the incident did not warrant further investigation and that the matter was "closed." Stevens testified that during the IRC, HBH's medical director stated his opinion that the therapeutic program worker (TPW) who had escorted the patient was justified in proceeding to the hospital without a police escort because the patient required immediate treatment for chest pains and an escort was not available. The TPW was not disciplined as a result of the incident. According to Stevens, the incident was subsequently discussed at the Investigative Review Committee which also determined that no further review was necessary. Nevertheless, plaintiff determined that the incident should be investigated and he directed HBH officers to conduct interviews with staff members who were involved in the incident. Plaintiff testified that he did not believe the IRC had the authority to end a police investigation.

{¶ 5} On March 25, 2004, plaintiff sent Stevens an e-mail wherein plaintiff sought Stevens' advice as to whether he should continue the investigation or allow either the nursing department or the human resources department to investigate. Stevens responded the same day and stated that she was "very concerned that there has been an ongoing police investigation" that she had not been made aware of. (Plaintiff's Exhibit 18.) Stevens informed plaintiff that soon after she had received plaintiff's e-mail, she had received a complaint from the nursing department that officers had been questioning nursing staff about the incident and various policies and procedures related to patient movement. According to Stevens, the nursing staff involved were "very upset." Stevens directed plaintiff to meet with her the next day and

to provide her "with a complete list of all ongoing investigations that your officers are working on." (Plaintiff's Exhibit 18.)

{¶ 6}  On April 28, 2004, Stevens met with plaintiff and informed him that she was considering revoking his appointment.  Stevens provided plaintiff with a statement which listed certain options he could exercise:  1) to request a written statement of reasons as to why the revocation of his appointment was being considered; 2) to request an informal meeting with Stevens to discuss the statement of reasons; 3) to have a decision to revoke his appointment reviewed by an administrative superior. (Plaintiff's Exhibit 7.)  Plaintiff wrote a brief response which acknowledged that he had received Stevens' statement; however, he refused to sign the document before speaking with legal counsel.

{¶ 7}  On May 3, 2004, Stevens provided plaintiff with a document entitled "Statement of Reasons" which summarized why she was considering the revocation of plaintiff's appointment.  In her statement, Stevens declared that she no longer had confidence in plaintiff's ability to function as police chief.  Specifically, Stevens stated:

{¶ 8}  "1.  The quality and timeliness of your work product have not been at a level consistent with the requirements of the position.

{¶ 9}  "2.  You have failed to act in a timely and appropriate manner regarding several serious problems in the Police Department.

{¶ 10} "3.  You have repeatedly failed to keep my office informed of investigations and work practice changes." (Plaintiff's Exhibit 4.)

{¶ 11} On May 5, 2004, plaintiff was placed on administrative leave and prohibited from making contact with HBH employees or clients.  (Plaintiff's Exhibit 6.) On May 19, 2004, Stevens notified plaintiff that his appointment as police chief was being revoked and that he had the right to submit a written request to have the decision reviewed by Sid Herndon, Deputy Director of the Ohio Department of Mental Health. On May 27, 2004, Herndon issued a decision which stated that he had reviewed the relevant facts and "determined that Ms. Stevens acted in a manner consistent with the law and the best interests of Heartland Behavioral Healthcare." (Plaintiff's Exhibit 16.)

RACIAL DISCRIMINATION

Plaintiff first alleges that the decision to revoke his appointment was racially motivated.

Former R.C. 4112.02 states, in part: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

Disparate treatment discrimination has been described as "the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Teamsters v. United States* (1977), 431 U.S. 324, 335-336, fn. 15. In a disparate treatment case, liability depends upon whether the protected trait actually motivated the employer's decision. *Hazen Paper Co. v. Biggins* (1993), 507 U.S. 604, 610. For example, the "employer may have relied upon a formal, facially discriminatory policy that required adverse treatment" of protected employees, or the "employer may have been motivated by the protected trait on an ad hoc, informal basis." Id. "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." Id. In order to establish discrimination in a disparate treatment case, the plaintiff initially has the burden of proving a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 252-253. Inasmuch as there was no direct evidence of racial discrimination in this case, plaintiff was required to show: 1) that he was a member of a protected class; 2) that he suffered an adverse employment action; 3) that he was qualified for the position he lost; and 4) either that he was replaced by a person outside the class or that a comparable non-protected person was treated more favorably after engaging in the same or similar conduct. See, e.g., *McDonell Douglas Corp. v. Green* (1972), 411 U.S. 792, 802; *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 582.

Plaintiff has satisfied the first two factors of a prima facie case; he is a member of a protected class and he was terminated from his position. Plaintiff has also established that he was replaced by a person outside the class.

Regarding the third factor, in determining whether plaintiff was qualified for the position he "must not only demonstrate the capability of performing the work, but must also demonstrate that he * * * is meeting the employer's legitimate expectations." *Smith v. Greater Cleveland Reg'l Transit Auth.* (May 24, 2001), Cuyahoga App. No. 78274. An employer may make a subjective decision to terminate an employee for any non-discriminatory reason, especially when a management level job is involved. *Ackerman v. Diamond Shamrock Corp.* (C.A. 6, 1982), 670 F.2d 66, 70.

As HBH's police chief, plaintiff was a top managerial employee who reported directly to CEO Stevens and he served as a member of Stevens' executive leadership team. Plaintiff acknowledged that it was important for him to maintain a relationship of confidence and trust with Stevens and that Stevens had informed him that she was disappointed with his failure to keep her apprised of ongoing investigations. According to Stevens, plaintiff had repeatedly failed to inform her of ongoing investigations that involved defendant's staff. Stevens testified that she became concerned that plaintiff had been dishonest with her after she learned that plaintiff had informed a workers' compensation manager that plaintiff needed to work additional hours during his transitional work program so Stevens would not "get mad." Stevens stated that plaintiff denied making such a statement when she confronted him with a document that contradicted plaintiff's denial. The court finds that while plaintiff was arguably capable of performing his duties as defendant's police chief, he failed to meet Stevens' legitimate expectations regarding such duties. Consequently, the court finds that he was not qualified for the position and that he has therefore failed to meet his burden under the third prong of the *McDonnell Douglas* test.

Even assuming that plaintiff had satisfied his burden of proving a prima facie case of discrimination, the burden of production would then shift to defendant to articulate some legitimate, nondiscriminatory reason for its action. *Burdine*, supra, at 253. The ultimate burden of persuasion remains at all times with plaintiff. Id.

Defendant produced evidence to demonstrate that Stevens had lost trust and confidence in plaintiff's ability to perform his duties as police chief. According to Stevens, plaintiff had difficulty organizing his assigned tasks and completing assignments in a timely manner. The evidence also shows that Stevens was concerned with the quality of plaintiff's work. For example, on June 13, 2003, Stevens issued a "problem identification" to plaintiff wherein she stated her belief that plaintiff had used poor judgment in scheduling staff training which had resulted in an untimely training request, unnecessary costs, and inadequate staffing at HBH. (Plaintiff's Exhibit 8.)

Upon review, the court finds that the overwhelming weight of the evidence demonstrates that defendant's decision to terminate plaintiff's employment was not based upon any consideration of plaintiff's race. Stevens testified credibly that race was not a factor in her decision to terminate plaintiff and that plaintiff had never mentioned the issue of race during any of her many discussions with him. Indeed, plaintiff offered no evidence, other than the fact that he was terminated, to support his claim of discrimination. Plaintiff has brought forth no credible evidence to demonstrate that Stevens' stated reason for plaintiff's termination was a pretext for discrimination. Accordingly, plaintiff cannot prevail on his claim of racial discrimination.

WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

Plaintiff alleges that defendant retaliated against him for conducting the investigation of the escape incident and for discriminatory reasons. According to plaintiff, his investigation constituted protected activity pursuant to R.C. 5101.61. Plaintiff further asserts that Stevens retaliated by orchestrating defendant's termination of plaintiff's employment.

The Supreme Court of Ohio held that "[a]n *at-will employee* who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny, so long as that employee had *fully complied* with the statute and was subsequently discharged or disciplined." (Emphasis added.) *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 1997-Ohio-219, paragraph 3 of the syllabus.

In order to establish a claim for tortious violation of public policy, plaintiff must prove the following four elements:  1) a clear public policy manifested in a statute, regulation or the common law;  2) that discharging an employee under circumstances like those involved would jeopardize the policy; 3) that the discharge at issue was motivated by conduct related to the policy; and 4) that there was no overriding business justification for the discharge. Id. at 151;  *Mitchell v. Mid-Ohio Emergency Servs., L.L.C.*, Franklin App. No. 03AP-981, 2004-Ohio-5264, ¶16.

Plaintiff argues that R.C. 5101.61(B) reflects the important public policy of encouraging employees to report patient abuse to the county department of job and family services without fear of retaliation, and as such, that the statute protects plaintiff's actions in this case. R.C. 5101.61 provides in part:

"(B)  Any person having reasonable cause to believe that an adult has suffered abuse, neglect, or exploitation may report, or cause reports to be made of such belief to the department.

"(C) The reports made under this section shall be made orally or in writing except that oral reports shall be followed by a written report if a written report is requested by the department.

"* * *

"(E)  No employer or any other person with the authority to do so shall discharge, demote, transfer, prepare a negative work performance evaluation, or reduce benefits, pay, or work privileges, or take any other action detrimental to an employee or in any way retaliate against an employee as a result of the employee's having filed a report under this section."

Although plaintiff directed the investigation into the circumstances which resulted in the patient's escape, there was no evidence to suggest that plaintiff ever reported the incident to the county department of job and family services.  While R.C. 5101.61(B) protects certain employees from adverse employment actions as a result of having reported patient abuse to a county department of job and family services, it does not allow plaintiff to assert "an even broader public policy by arguing that anyone who complains about patient care to anyone is protected from discharge."  *Mitchell*, at ¶22. See *Mitchell*, supra, at ¶18 (R.C. 2305.24 protects a physician from personal liability if

he or she complains about patient care but only where such complaints are made to a quality assurance committee). Moreover, the conduct that is related to the public policy which plaintiff asserts is manifested in R.C. 5101.61 is reporting patient abuse, which did not occur in this instance. Inasmuch as plaintiff did not fully comply with the statute in regard to the escape, defendant could not have discharged plaintiff in retaliation for such protected activity.

Assuming arguendo that plaintiff has established a prima facie case of retaliation in violation of public policy, as discussed above, defendant has articulated a legitimate business reason for terminating plaintiff. Specifically, defendant established that Stevens had lost trust and confidence in plaintiff's ability to serve as police chief. Accordingly, plaintiff's claim for wrongful termination in violation of the public policy embodied in R.C. 5101.61 is without merit.

For the foregoing reasons, the court finds that plaintiff has failed to prove any of his claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MICHAEL BOYD

    Plaintiff

    v.

OHIO DEPARTMENT OF MENTAL HEALTH

    Defendant
    Case No. 2007-03587

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Amy S. Brown
Eric A. Walker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

David A. Van Gaasbeek
1303 West Maple Street, Suite 104
North Canton, Ohio 44720

AMR/cmd
Filed August 19, 2010
To S.C. reporter September 9, 2010